**DeMarco•Mitchell, PLLC**
Robert T. DeMarco
Michael S. Mitchell
1255 West 15th St., 805
Plano, TX 75075
**T** 972-578-1400
**F** 972-346-6791

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | |
|---|---|
| IN RE: | Case No.: 10-43554 |
| **CENTER POINT DAIRY LIMITED, L.P.** | Chapter: 11 |
| 75-2699811 | |
| 6414 FM 2653 S | HEARING DATE: October 18, 2010 |
| Cumby, TX 75433 | HEARING TIME: 10:00 a.m. |
| Debtor(s). | |

## AFFIDAVIT OF INGE HEIJLIGERS IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS

BEFORE ME, the undersigned authority, on this day personally appeared INGE HEIJLIGERS, who after being duly sworn by me, and upon oath stating that she is over eighteen (18) years of age, of sound mind, and that she is qualified and competent in all respects to make this affidavit and to do so of her own personal knowledge, and further stated:

1.      I am the Managing Member of LIH Ltd., L.C. ("LIH") and LIH is the general partner of the Center Point Dairy Limited, L.P., the debtor and debtor in possession in the above captioned chapter 11 case (the "Debtor" and/or "Center Point").  In this capacity, I am generally familiar with the day to day business operations, books and records, and business and financial affairs of the Debtor.

2.      On October 13, 2010 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code").

3.      The Debtor is currently operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      There has been no request for the appointment of a trustee or examiner in the case *sub judice*.  No official committees have been appointed or designated.

5.      In an effort to minimize the impact resulting from the commencement of this chapter 11 bankruptcy case, the Debtor has requested various types of emergency relief through several motions (the "First Day Motions").  The First Day Motions seek relief intended to allow the Debtor to effectively transition into chapter 11 and minimize the disruption of the business operations.

6.     I am familiar with the contents of each of the First Day Motions (including the exhibits and/or schedules attached thereto), and I believe the requests for relief made therein are:

    a.  necessary to enable the Debtor to successfully operate in chapter 11 with minimal disruption and loss of productivity and value;

    b.  a critical element to achieving a successful reorganization; and

    c.  in the best interest of the Debtor's estate and the creditors thereof.

7.     Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the dairy farm operations and/or learned from my review of relevant documents and information provided to me from other members of the Debtor's management and advisors. If called upon to testify, I could and would testify to the facts set forth herein.

## A. Business History and Operations

8.     The Debtor currently owns and operates a dairy farming operation located in Northeast Texas (the "Dairy Farm").

9.     The Dairy Farm commenced operations in January, 1994, with Leon and Inge Heijligers' (the "Heijligers") purchase of a 417 acre farm (the "Miller Grove Farm"), an adjacent homestead situated on 1.26 acres (the "Homestead"), and 160 pregnant heifers that were close to calving.

10.    In March, 1997, the Heijligers formed Center Point Dairy Limited, L.P. ("Center Point") and LIH, Ltd., L.C. ("LIH"). LIH is the 1% general partner of Center Point. All of the Dairy Farm assets, including the homestead, were transferred to Center Point at that time.

11.    The Dairy Farm expanded over the years with Center Point's purchase of an additional 204 acres adjacent to the Miller Grove Farm in September, 2004, and 162 acres of land in Cumby, Texas (the "Cumby Pasture"), in July, 2007.

12.    While the acquisition of the Cumby Pasture was necessary at the time, its use was cumbersome as it was located approximately nine (9) miles from the Miller Grove Farm. As such, when the Debtor was subsequently presented with an opportunity to acquire an additional 104 acres adjacent to the Miller Grove Farm (the "Adjacent Pasture") they opted to purchase the property. This acquisition was made by the Heijligers and not the Debtor.

13.    In May, 2006, Center Point was solicited by Legacy Bank, PCA ("Legacy"), to restructure its loans with them. Center Point agreed to move its banking business to Legacy, and in so doing was able to access an additional $300,000.00 in capital which monies were used

to make improvements on the Dairy Farm and acquire an additional 300 pregnant heifers.

14.     The Debtor currently employs 10 individuals who work with approximately 700 milking cows, 600 head of cattle in pasture, and between 60 and 120 heifer calves.

15.     The Debtor's business operates 24/7 and is focused upon the care and feeding of dairy cows used in the production of milk for sale to wholesale buyers.  The Debtor also generates additional revenue from the sale of certain cattle, primarily bull calves and/or older or non-producing dairy cows (collectively, the "Cull Cows").

16.     The Debtor, like other dairy farming operations throughout the country, has faced serious economic challenges in the recent past.  Milk prices plummeted to historic lows in 2009.  Although milk prices have recovered somewhat during 2010, the pricing of product and the overall cost of production continue to provide challenges for the Dairy Farm's profitability. Adding to the Debtor's financial challenges is the fact that agricultural lenders are less willing and/or able to work with borrowers to extend loan payments in the current economy.

17.     The case sub judice is basically a balance sheet restructuring case and not an operational restructuring case.  The Debtor's assets and going concern value are worth less today than they were worth in 2006 when Center Point restructured its finances with Legacy. This case is filed to restructure an overleveraged balance sheet, not to restructure operations per se.

**B.  Capital Structure**

18.     The Debtor and the Heijligers are party to two (2) promissory notes dated January 11, 2010 (collectively, the "Cattle Notes") with Legacy, PCA (the "Secured Lender"), pursuant to which the Secured Lender extended a secured revolving note in the original principal amount of $400,000.00 (the "Revolver") and a term loan in the original principal amount of $1,379,400.00 (the "Term Loan").  The Cattle Notes are secured by the Debtor's livestock, crops and the proceeds thereof.  The Revolver and Term Loan are the product of a renewal of a loan that was originally entered into by and between the Debtor and Secured Lender on or about May 5, 2006, in the original principal sum of $1,779,400.00.  The Revolver and Term Loan matured on July 1, 2010.  Efforts to renew and/or modify the Revolver and Term Loan have not been successful.  Since the inception of the relationship, the Debtor has only ever made interest only payments to Secured Lender.  As additional collateral the Notes are secured by the Debtor's real property described in Exhibit "A" (the "Farm").

19.     The Debtor and the Heijligers are party to a secured promissory note and deed of trust dated May 5, 2006, with the Secured Lender in the original principal amount of $2,154,700.00 (the "Farm Note").  The Farm Note was subsequently modified pursuant to a loan conversion agreement dated January 7, 2010, thereby lowering the interest rate to 4% for a twelve (12) month period commencing February 1, 2010.  The Farm Note is secured by the

Farm.

20.     The Cattle Notes and the Farm Note result in a total encumbrance of approximately $3,934,100.00 against the Farm.

21.     On or about July 11, 2007, as referenced above, the Debtor acquired the Cumby Pasture, which purchase was financed by the Secured Lender.  In connection with that purchase, the Debtor and the Heijligers executed a secured promissory note and deed of trust dated July 11, 2007, with the Secured Lender in the original principal amount of $374,000.00 (the "Cumby Loan").  There are no other known encumbrances against the Cumby Pasture.

22.     On or about May 2, 2008, again, as referenced above, the Heijligers acquired the Adjacent Property, which purchase was financed by Agriland, FLCA ("Agriland").  In connection with that purchase the Heijligers executed a secured promissory note and deed of trust dated May 2, 2008, with Agriland in the original principal amount of $207,967.75 (the Agriland Loan").  There are no other known encumbrances against the Adjacent Property.

23.     The Debtor and the Heijligers are also joint obligors on the equipment financed by AGCO Finance, LLP ("AGCO").  With the exception of Center Point's obligation to Community Bank, AGCO is the lender on the remainder of the financed Dairy Farm equipment.

## C.  First Day Motions

- **Debtor's Emergency Motion for Joint Administration**

24.     Center Point and the Heijligers are affiliates.  Center Point and the Heijligers request their respective bankruptcy cases be jointly administered.  I believe the joint administration of the Center Point and Heijligers bankruptcy cases will:  (a) ease the administrative burden on this Court and the parties; and (b) prove to be more economical than proceeding without the benefit of joint administration.  In short, I believe joint administration is in the best interest of both bankruptcy estates.

- **Debtor's Emergency Motion for Order Authorizing the Interim and Final Use of Cash Collateral**

25.     The Debtor has an urgent need for the immediate use of cash collateral pending the final hearing on this Motion.  Accordingly, the Debtor seeks to use cash collateral existing on or after the Petition Date, which collateral may be subject to the Secured Lender's Liens.  As of the Petition Date, the Debtor does not have sufficient unencumbered cash to fund their business operations.

26.     Absent the ability to use cash collateral, the Debtor will not be able to pay for

animal feed, insurance, wages, utilities, and other critical operating expenses. Consequently, without access to cash collateral, the Debtor will no longer be able to maintain the Dairy Farm operations and will be forced to liquidate assets. Any liquidation of the Debtor's bankruptcy estate would result in immediate and irreparable harm.

27.     The Debtor is not able to obtain sufficient funds for the continued operation of the Dairy Farm other than by obtaining the right to use cash collateral pursuant to section 363 of the Bankruptcy Code.

28.     I, in conjunction with my husband, Leon Heijligers, have formulated a two (2) week budget for the use of cash collateral from the Petition Date (the "Budget"). I believe that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of operating the Dairy Farm. Further, I believe that the use of cash collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay administrative expenses as the become due and payable during the period covered by the Budget.

- **Debtor's Emergency Motion for Entry of Interim and Final Orders Determining Adequate Assurance of Payment for Future Utility Services**

29.      In connection with the Dairy Farm operation, the Debtor purchases the services and products of certain utility providers ("Utility Providers"). The Debtor pays the Utility Providers, on average, approximately $5,200.00 per month for services rendered. The Debtor has a good payment history with the Utility Providers and believes that it was current in making all payments owed to Utility Providers as of the Petition Date.

30.     Preserving utility services on an uninterrupted basis is essential for not only the Dairy Farm operations, but the health and welfare of the cattle. As noted previously, the Dairy Farm operates 24/7. As such, any interruption in any utility will negatively impact the Dairy Farm operations.

- **Debtor's Emergency Motion for Authority to Pay Certain Prepetition Wages Claims**

31.     As I indicated previously, the Dairy Farm operates 24/7. As such, any delay in that business operation could have a substantial negative impact on cash flow. The Debtor's employees are critical to ensuring that the Dairy Farm operates continually in order to maximize production. If the Debtor misses payroll, the Debtor's employees will likely cease working and/or quit. By this motion the Debtor is asking for authority to pay any prepetition wage claims.

32.     The Debtor contends that as of the Petition Date the Debtor's employees were due about three (3) days of pay. The Debtor's employees are paid current for services rendered

on a weekly basis.  As such, as of Monday morning, October 11, 2010, all employees were paid in full for the prior week's worth of services.

33.     The total prepetition payroll due and owing for the payroll that will end on October 17, 2010, which is due to be funded on October 18, 2010, is $2,138.49.  The forgoing sum reflects an aggregate payroll obligation that is substantially less than the per creditor limits set forth in Section 507(a)(4).  The granting of relief under the subject motion is in the best interests of the bankruptcy estates and the creditors of the Debtor.

- **Debtor's Emergency Motion for Authorization to Continue its Liability and Other Insurance Programs and to Enter Into Financing Agreements Relative Thereto**

34.     The Debtor currently has in place a casualty and general liability insurance policy. Both policies are financed. The Debtor needs to be able to continue to use such financing options during the course of this chapter 11 bankruptcy case so as to prevent dramatic negative impact to its cash flow. Moreover, to the extent a portion of the insurance coverage was provided prepetition, the Debtor must be able to pay for that post-petition to the extent monies are thereon due. The Debtor cannot continue under chapter 11 without such policies in place.  It is in the best interest of the creditors and this bankruptcy estate to permit the Debtor's continued financing of its necessary insurance policies.

- **Debtor's Emergency Motion for Authority to Pay Certain Prepetition Tax Claims**

35.     In the ordinary course of the Dairy Farm operation, the Debtor is required to hold, in trust for its employees, its portion of certain federal withholding taxes.  As it is likely that such taxes are held in trust for the benefit of Texas and/or the Federal Government, there is no reason to bar the Debtor from continuing to pay those obligations on a timely basis, including those taxes incurred and collected pre-petition.  Failure to allow the Debtor to pay such taxes would only result in increased priority tax claims.  As such, the Debtor needs to be able to continue to pay all tax obligations in a timely fashion.  The granting of relief under the subject motion is in the best interests of the bankruptcy estate and the creditors of the Debtor.

Further affiant sayeth not.

Inge Heijligers

Subscribed and sworn to before me the undersigned authority on this 13th day of October, 2010, to certify which witness my hand and seal of office.

Notary public in and for the State of Texas

My Commission Expires: 6/3/2012

Barbara Ann Drake
My Commission Expires
06/03/2012

EXHIBIT "A"

Page 1 of 5

## TRACT ONE:

Being a tract or parcel of land situated in Hopkins County, Texas, being in the Jose F. Sanchez Survey, Abstract No. 824, and the Shelby Tunnage Survey Abstract No. 954, being part of a 147.7 acre tract, all of a 20.226 acre tract, all of a 125.0 acre tract, all of a 10.5 acre tract South of Farm to Market No. 2653, all of a 23.0 acre tract East and South of Farm to Market No. 2653, all of a 104.5 acre tract of land South of Farm to Market No. 2653, recorded in the Hopkins County, Real Property Records in Volume 113 at Page 138 and being more particularly described as follows:

BEGINNING at a 1/2 inch iron rod set in the centerline intersection of Hopkins County Road No. 1127 and a Hopkins County Road running East and West, being on the North line of the Anastacio Caro Survey, Abstract No. 143, being the Southwest corner of said 147.7 acre tract a 1/2 inch iron rod set at a fence corner post bearing North 65 deg. 36 min. 09 sec. East 50.39 feet, also a 1/2 iron rod set at a fence corner post bearing North 32 deg. 55 min. 31 sec. East 55.21 feet;

THENCE North 03 deg. 55 min. 39 sec. East with the centerline of Hopkins County Road No. 1127, a distance of 2202.42 feet to a 1/2 inch iron rod found for corner at the Southwest corner of 2.67 acre tract of land recorded in Volume 151 at Page 215 of the Hopkins County Real Property Records;

THENCE South 88 deg. 12 min. 52 sec. East with the South line of said 2.67 acre tract, a distance of 344.00 feet to a 1/2 inch iron rod found for corner;

THENCE North 03 deg. 55 min. 39 sec. East with the East line of said 2.67 acre tract, a distance of 339.36 feet to a 1/2 inch iron rod found for corner;

THENCE North 88 deg. 12 min. 52 sec. West with the North line of said 2.67 acre tract, a distance of 344.00 feet to a 1/2 inch iron rod found for corner in the centerline of Hopkins County Road No. 1127;

THENCE North 03 deg. 55 min. 39 sec. East with the centerline of said road passing the Northwest corner of said 147.7 acre tract at 157.57 feet, in all a distance of 634.25 feet to a 1/2 inch iron rod set for corner at the intersection of Hopkins County Road No. 1127 and a Hopkins County Road heading West, being the Southeast corner of said 23.0 acre tract;

THENCE North 83 deg. 57 min. 02 sec. West with the centerline of county road, a distance of 755.30 feet to a 1/2 inch iron rod set for corner, being the Southeast corner of a 4.031 acre tract of land described in Volume 283 at Page 151 of the Hopkins County Deed Record, also being South 83 deg. 57 min. 02 sec. East 100.00 feet from the Southwest corner of said 23.00 acre tract;

THENCE North 04 deg. 45 min. 45 sec. East a distance of 20.00 feet to a concrete highway monument found for corner in the east right of way line of Farm Market No. 2653;

THENCE North 40 deg. 28 min. 19 sec. West along a flare in the right of way, a distance of 70.54 feet a concrete highway monument found for corner at the beginning of a curve to the right having a radius of 1860.08 feet, a central angle of 50 deg. 10 min. 07 sec. and a chord bearing of North 30 deg. 51 min. 20 sec. East at 1577.17 feet;

THENCE in a Northeasterly direction, along said curve and the Southeasterly right of way of Farm to Market No. 2653, an arc length of 1628.70 feet to a concrete highway monument found for corner;

CONTINUED SEE ATTACHED HERETO

THENCE South 79 deg. 35 min. 59 sec. East along a flare on right of way, a distance of 69.19 feet to a concrete highway monument found for corner in the West line of Hopkins County Road No. 1127;

THENCE North 60 deg. 44 min. 16 sec. East passing the West line of said 104.5 acre tract and the West line of the Sanchez Survey, a distance of 49.80 feet to a concrete highway monument found for corner;

THENCE North 13 deg. 34 min. 27 sec. East along a flare on right of way, a distance of 69.15 feet to a concrete highway monument found for corner at the beginning of a curve to the right having a radius of 1860.08 feet, a central angle of 12 deg. 44 min. 47 sec., and a chord bearing of North 66 deg. 58 min. 48 sec. East at 412.95 feet;

THENCE in a Northeasterly direction; along said curve and the South right of way of Farm to Market No. 2653, an arc length of 413.81 feet to a concrete highway monument found for corner;

THENCE North 73 deg. 17 min. 00 sec. East along the South right of way, a distance of 2565.64 feet to a 1/2 inch iron rod set at the beginning of a curve to the left having a radius of 1196.28 feet, a central angle of 49 deg. 25 min. 25 sec. and a chord bearing of North 48 deg. 28 min. 52 sec. East at 1000.22 feet;

THENCE in a Northeasterly direction, along said curve and Southerly right of way, an arc length of 1031.92 feet to a fence corner post for corner, being the Northwest corner of said 20.226 acre tract of land;

THENCE North 86 deg. 57 min. 14 sec. East departing said right of way, a distance of 40.52 feet to a fence corner post for corner in the East line of a 52.7 acre tract in the corner of an abandoned county road, being the Northeast corner of said 20.226 acre tract ;

THENCE South 03 deg. 56 min. 06 sec. West along abandoned road and the East line of said 20.226 acre tract, a distance of 1208.72 feet to a 1/2 inch iron rod set for corner in the North line of said 125.0 acre tract;

THENCE South 85 deg. 36 min. 54 sec. East along the North line of said 125.0 acres, a distance of 340.78 feet to a 1/2 inch iron rod set for corner, being the Northeast corner of the 125.0 acres;

THENCE South 07 deg. 19 min. 14 sec. West along a fence and the East line of 125.0 acres, a distance of 680.52 feet of a fence corner post for corner at an East-West fence intersection;

THENCE South 03 deg. 37 min. 10 sec. West along a fence and said East line, a distance of 2008.63 feet to a 1/2 inch iron rod set for corner, being the Southeast corner of said 125.00 acre tract;

THENCE North 85 deg. 43 min. 21 sec. West along a fence and the South line of 125.0 acre tract, a distance of 1447.42 feet to a 1/2 inch iron rod set at a fence corner post for corner, being the Northeast corner of said 147.7 acre tract;

THENCE South 03 deg. 58 min. 02 sec. West along a fence line and the East line of said 147.7 acres, a distance of 2683.43 feet to a 1/2 inch iron rod set for corner in the centerline of a county road, being the Southeast corner of said 147.7 acre tract, a 1/2 inch iron rod set at a fence corner post bearing North 03 deg. 58 min. 02 sec. East 20.00 feet;

CONTINUED SEE ATTACHED HERETO

**Page 3 of 5**

**THENCE** North 86 deg. 09 min. 30 sec. West along the centerline of road and the South line of said 147.7 acre, a distance of 2405.27 feet returning to the Point of Beginning, Save & Except 1.555 acres recorded in Volume 302 on Page 776 Deed Records of Hopkins County, Leaving 412.120 acres of land, more or less, in the said "Tract One"

## LESS HOWEVER

Being a tract or parcel of land being situated in Hopkins County, Texas, being part of the Jose F. Sanchez Survey No. 824, being part of a 104.5 acre tract recorded in Volume 113 at Page 138 of the Hopkins County Real Property Records, being all of a called 2.0 acre tract of land reserved and excepted to said 104.5 acres described from L.D. Dickens and wife, Ruby Dickens to William T. Tate and Trudie Mae Tate, recorded in Volume 302 at Page 776 of the Hopkins County Deed Records on May 30, 1966, as the residence of L.D. Dickens and wife Ruby Dickens, and being more particularly described as Follows;

**BEGINNING** at a 1/2 inch iron rod set at a fence corner post for corner, being North 03 deg. 55 min. 39 sec. East a distance of 460.27 feet from the Southeast corner of a 23.0 acre tract of land recorded in Volume 113 at Page 138 of the Hopkins County Deed Records, also being South 03 deg. 55 min. 39 sec. West a distance of 1129.47 feet from the Eastern most Southeast corner of a 4.031 acre tract of land in a right of way deed to the State of Texas recorded in Volume 282 at Page 151 of the Hopkins County Deed Records, being on the West line of said Sanchez Survey;

**THENCE** South 86 deg. 05 min. 05 sec. East along a fence line, a distance of 216.74 feet to a 1/2 inch iron rod set at a fence corner post for corner;

**THENCE** North 02 deg. 41 sec. 09 min. East along a fence line, a distance of 313.07 feet to a 1/2 inch iron rod set at a fence corner post for corner;

**THENCE** North 89 deg. 31 min. 13 sec. West along a fence line a distance of 108.98 feet to a 1/2 inch iron rod set at an angle point in fence line;

**THENCE** North 61 deg. 20 min. 16 sec. West along a fence line, a distance of 67.19 feet to a 1/2 inch iron rod set at a fence corner post for corner;

**THENCE** North 86 deg. 04 min. 31 sec. West a distance of 40.14 feet to a 1/2 inch iron rod set for corner, being in the West line of said Sanchez Survey;

**THENCE** South 03 deg. 55 min. 39 sec. West along the West line of survey, a distance of 334.60 feet returning to the Point of Beginning and containing 1.555 acres of land, more or less.

## TRACT TWO:

Being a tract or parcel of land situated in Hopkins County, Texas, being in the Jose F. Sanchez, Abstract No. 824, being all of a 104.5 acre tract of land north of Farm to Market No. 2653 recorded in Hopkins County Real Property Records in Volume 113 at Page 138, and being more particularly described as follows;

**BEGINNING** at a 1/2 inch iron rod set for corner in the center of an abandoned road, being the Northwest corner of said 104.5 acre tract;

**THENCE** South 89 deg. 38 min. 44 sec. East wit said abandoned road and the North line of 104.5 acres, a distance of 996.76 feet to a 1/2 inch iron rod set for corner;

**THENCE** South 16 deg. 43 min. 00 sec. East a distance of 52.70 feet to a 1/2 inch iron rod set for corner in the North right of way line of Farm to Market No. 2653;

CONTINUED SEE ATTACHED HERETO

**Page 4 of 5**

THENCE South 73 deg. 19 min. 02 sec. West along said right of way, a distance of 703.41 feet to a concrete highway monument found for corner at the beginning of a curve to the left, having a radius of 1960.08 feet a central angle of 11 deg. 51 min. 10 sec. and a chord bearing of South 67 deg. 23 min. 27 sec. West at 404.76 feet;

THENCE in a Southwesterly direction, along said curve and the North right of way an arc length of 405.48 feet to a 1/2 inch iron rod set for corner, being in the West line of said 104.5 acres and the center of an abandoned road;

THENCE North 04 deg. 54 min. 21 sec. East along the center of said abandoned road and West line of 104.5 acre tract, a distance of 415.70 feet returning to the Point of Beginning and containing 5.008 acres of land, more or less.

## TRACT THREE:

Being a tract or parcel of land situated in Hopkins County, Texas being in the Shelby Tunnage Survey, Abstract No. 954, being part of a 10.5 acre tract recorded in Volume 113 at Page 138 of the Real Property Records of Hopkins County and being more particularly described as follows:

COMMENCING at a 1/2 inch iron rid set in the centerline of an abandoned road on the East line of the Tunnage Survey, being the Northwest corner of a 104.5 acre tract of land recorded in Volume 113 at Page 138 of the Real Property Records of Hopkins County, Texas;

THENCE South 04 deg. 54 min. 21 sec. West along the West line of said 104.5 acres, a distance of 415.70 feet to a 1/2 inch iron rod set in the north right of way line of Farm to Market No. 2653;

THENCE South 59 deg. 47 min. 54 sec. West a distance of 107.43 feet to a 1/2 inch iron rod set at a chain- link fence post at the beginning of a curve to the left having a radius of 1960.08 feet, a central angle of 07 deg. 40 min. 58 sec., and a chord bearing of South 54 deg. 28 min. 59 sec. West at 262.63 feet for the Point of Beginning of this tract;

THENCE in a Southwesterly direction, along the North right of way line of Farm to Market No. 2653, an arc length of 262.83 feet to a 1/2 inch iron rod set at a chain-link fence corner post for corner;

THENCE North 19 deg. 16 min. 45 sec. West along a chain-link fence, a distance of 259.14 feet to a fence corner post for corner;

THENCE North 70 deg. 59 min. 34 sec. East along a Chain-link fence, a distance of 253.48 feet to a fence corner post for corner;

THENCE South 18 deg. 52 min. 08 sec. East along a chain-link fence, a distance of 184.50 feet returning to the Point of Beginning containing 1.269 acres of land, more or less.

## TRACT FOUR:

All that certain tract or parcel of land situated in Hopkins County, Texas, about 13 miles Southwest from Sulphur Springs, being a part of the J. F. Sanchez Survey, A-824, and described by metes and bounds as follows, to-wit:

BEGINNING at a stake set in the S.B. line of the J. F. Sanchez Survey, the S.W. corner of Block No. 9 of a subdivision of said survey, the same also being the S.E. corner of a 147.7 acre tract of land owned by Deryl and Fred Hull, and being in the NB line of the Thomas Proctor Survey;

THENCE North 2868 feet with the E.B. line of said 147.7 acre tract to an 8 inch bois d'arc post for a corner;

CONTINUED SEE ATTACHED HERETO

### Page 5 of 5

THENCE East 1448 feet to a stake set for a corner; said corner being the S.W. corner of a 30 acre tract out of Block No. 7 of said survey;

THENCE North 1494 feet to a 6 inch bois d'arc post for a corner;

THENCE East 420 feet to a stake set in the center of Big Creek; (Old Channel)

THENCE down said Big Creek with its meanderings in a Southeast direction for an approximate distance of 1725 feet to a stake set for a corner; said point being in the N.B. line of the former R. T. Junell 108 acre tract of land;

THENCE East 320 feet to a stake set for a corner said point being the N.W. corner of Block No. 8 of said subdivision of said survey;

THENCE South 2868 feet to a stake set in Big Creek for a corner; same being in the N.B. line of A. Fitzgerald Survey, also being the S.E. corner of Block No. 9 of the subdivision of said survey;

THENCE West with the NB line of said Fitzgerald survey, the NB line of the J. E. Anderson Survey, and along the NB line of the T. Proctor Survey, 3018 feet to the place of beginning.

CONTAINING 227.34 acres of land, more or less.

BEING the same land described in deed from Bruce McNiel and wife, Ella Mae McNiel to Sam Speed and wife, Jewell Speed, dated 12-16-1963, Vol. 284, Page 517, Deed Records, Hopkins County, Texas.

## LESS HOWEVER FROM THE ABOVE DESCRIBED TRACT FOUR:

BEING a 19.592 acre tract and being all that certain lot, tract or parcel of land situated in the J. F. Sanchez Survey, A-824, Hopkins County, Texas, and being a part of a called 227.34 acre tract described in a deed from Bruce McNiel and wife, Ella Mae McNiel to Sam Speed and wife, Jewell Speed as recorded in Vol. 284, Page 517, Hopkins County Deed Records, and being more particularly described as follows:

BEGINNING at a nail set in the centerline of County Road No. 1152 and on the south line of said 227.34 acre tract and on the north line of a called 25 acre tract described in a deed to Yates as recorded in Vol. 260, Page 93, H.C.D.R. for a corner, from which the southwest corner of said 227.34 acre tract bears N 90 deg. 00 min. 00 sec. W a distance of 683.54 feet;

THENCE N 04 deg. 09 min. 18 sec. E a distance of 1672.03 feet to a 1/2 inch iron rod set for a corner;

THENCE S 69 deg. 23 min. 10 sec. E a distance of 554.99 feet to a 1/2 inch iron rod set for a corner;

THENCE S 03 deg. 20 min. 01 sec. W a distance of 1474.74 feet to a nail set in the centerline of said Road and on the south line of said 227.34 acre tract and the north line of said 25 acre tract for a corner;

THENCE S 90 deg. 00 min. 00 sec. W a distance of 554.85 feet to the point of beginning and containing 19.592 acres of land, more or less.